IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

**STATE OF TENNESSEE v. ORLANDO MALONE**

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-98-278     Carroll L. Ross , Judge**

---

**No. E1999-01347-CCA-R3-CD - Decided**
**May 26, 2000**

---

Defendant Orlando Malone was convicted by a jury of one count of first degree felony murder, two counts of attempted especially aggravated robbery, and one count of aggravated robbery. Following a sentencing hearing, the trial court imposed a total sentence of life plus twenty years. Defendant challenges his convictions, raising the following issue: whether the evidence was sufficient to support his convictions. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

WOODALL, J. delivered the opinion of the court, in which WADE, P.J. and TIPTON, J. joined.

Charles M. Corn, District Public Defender, Richard Hughes, Assistant Public Defender, and Wayne Carter, Assistant Public Defender, Cleveland, Tennessee, for the appellant, Orlando Malone, at trial; Steve McEwen, Mountain City, Tennessee, for the appellant, Orlando Malone, on appeal.

Paul G. Summers, Attorney General and Reporter, Clinton J. Morgan, Assistant Attorney General, Jerry N. Estes, District Attorney General, Carl F. Petty, Assistant District Attorney General, and Stephen D. Crump, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  FACTS**

Charles Massingill testified that he went to the upstairs apartment of Marcus Williams at 580 Dooley Street in Cleveland, Tennessee, at approximately 11:30 p.m. on May 22, 1998. Massingill subsequently joined Williams, Eric Binion, and Kenneth Blair in sitting on the porch and drinking beer. At this point, Defendant and two other African-American males, Anthony Reid and Oneal Sanford, came upstairs and Defendant asked Williams if he had change for a fifty-dollar bill. When Williams responded that he did not, Defendant and his companions went back downstairs. Williams, Blair, and Binion then went inside the apartment while Massingill remained outside.

Massingill testified that shortly thereafter, Defendant and his companions came up the stairs. One of Defendant's companions then forced Williams, Blair, and Binion to come out of the apartment and lie down while Massingill remained sitting in a chair. Sanford then pointed a gun at Massingill's eye and asked whether he had any money and Massingill took 79¢ out of his pocket. Reid then shot Blair and Sanford shot Massingill in the eye. Although Massingill did not see Defendant holding a gun, he believed that Defendant was participating with Reid and Sanford.

Eric Binion testified that he was drinking beer with Williams, Massingill, and Blair at Williams' apartment on the night of May 21/22, 1998. While they were drinking, Defendant came up the stairs and asked whether they had change for a fifty dollar bill. When he was told no, Defendant left. Binion then went into the apartment.

Binion testified that shortly thereafter, Defendant entered the apartment, pointed a gun at him, and forced him to go out of the apartment. Defendant then searched Binion's pockets and took his keys and approximately $30.00. During this time, the two other men were holding Massingill and Blair at gunpoint.

Binion testified that at this point, Defendant searched Williams' pockets and stated that Williams did not have anything. Blair then "mumbled something" and the shooting began. When he heard the shots, Binion fled through the apartment and jumped out the window, and he was shot in the hand while doing so. Binion subsequently observed the three assailants leaving in a white car with a temporary tag.

Marcus Williams testified that he was drinking beer with Massingill, Blair, and Binion at his apartment on the night of May 21/22, 1998. While they were drinking, Defendant came up the stairs, asked for change for a fifty dollar bill, and then went back downstairs. Shortly thereafter, Defendant returned with Reid and Sanford and Defendant chased Binion into the apartment while Defendant was holding a gun.

Williams testified that Defendant subsequently brought Binion out of the apartment and then searched Binion's pockets. Defendant then pointed a gun at Williams, searched his pockets, and told the others that he did not have anything. Defendant also searched Blair and Massingill. At this point, Blair "mumbled something" and the assailants shot Williams in the back and leg.

Sergeant Randy Gates testified that on the night of May 21/22, 1998, he responded to a report of a multiple shooting at a two-story apartment building at 580 Dooley Street. When he arrived, Gates was informed that the three shooters were African-American males who left the scene in a white four-door vehicle with a temporary tag. Gates subsequently observed that there were six .22 caliber shell casings in the parking lot that appeared to have been fired from higher than ground level.

Deputy Jimmy Woody testified that on May 22, 1998, he participated in the chase of a small white vehicle that matched the description of the vehicle involved in the shooting on Dooley Street. The police officers eventually forced the white vehicle to stop and when Woody approached the

vehicle, the driver and the backseat passenger ran away. Defendant remained in the vehicle, however, and he was apprehended by Woody.

Detective Steven Bennett testified that he responded to the call from the Dooley Street apartment on May 22, 1998. When he arrived, Bennett discovered five .22 caliber shell casings. Police officers subsequently discovered a .22 caliber semi-automatic, a .22 caliber revolver, and a .45 caliber semi-automatic in the same general area where Defendant was apprehended. Defendant and the State stipulated that the shell casings found at the scene of the shooting were fired by one or more of these guns.

Bennett testified that after they were apprehended and searched, 94¢ was discovered on Defendant and $40.67 was discovered on Sanford. When Bennett searched the vehicle, he found two boxes of .22 caliber rounds. Bennett also observed that thirty rounds were missing from one of the boxes.

Dr. Charles Harlan testified that he performed an autopsy on the body of Kenneth Blair on May 22, 1998. Dr. Harlan opined that Blair's death was caused by a .22 caliber bullet that entered the right side of his head and traveled through his brain.

## II. ANALYSIS

Defendant contends that the evidence was insufficient to support any of his four convictions. We disagree.

Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995). Since a verdict of guilt removes the presumption of a defendant's innocence and replaces it with a presumption of guilt, the defendant has the burden of proof on the sufficiency of the evidence at the appellate level. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

**A.**

We conclude that there is absolutely no question that when the evidence is viewed in the light most favorable to the State, as it must be, the evidence was sufficient to support Defendant's conviction for the aggravated robbery of Binion.

Under Tennessee law, robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). In addition robbery becomes aggravated when, as in this case, the robbery is accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (1997).

Binion testified that on the night in question, Defendant entered the apartment, pointed a gun at him, forced him to go out of the apartment, searched his pockets, and took Binion's keys and approximately $30.00. This evidence is unquestionably sufficient to support the conviction for aggravated robbery.

**B.**

We also conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient to support Defendant's convictions for the attempted especially aggravated robbery of Williams and the attempted especially aggravated robbery of Massingill.

As previously stated, robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1997). In addition, robbery becomes especially aggravated when it is accomplished with a deadly weapon and the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-403(a) (1997). Further, "[a] person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part." Tenn. Code Ann. § 39-12-101(a)(2) (1997).

Williams testified that on the night in question, Defendant pointed a gun at his head, searched his pockets, and reported that there was no money in the pockets. Williams also testified that shortly thereafter, he was shot in the back and in the leg.

Williams testified that after Defendant pointed a gun at his head and searched him, Defendant searched Massingill. Massingill testified that he was subsequently shot in the eye and he still has blurriness in his eye as a result.

We note that it is irrelevant that there was no proof that Defendant was the one who shot Williams and Massingill. Under Tennessee law, "[a] person is criminally responsible for an offense committed by the conduct of another if: . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (1997). Williams' testimony indicates that Defendant was clearly acting with intent to promote or assist the commission of the offenses and he clearly aided in their commission. Further, the proof that

Defendant fled the scene of the offenses in the same vehicle as Reid and Sanford also indicates that he had been acting with intent to promote or assist their criminal misconduct. Thus, Defendant is criminally responsible for the serious bodily injuries to Williams and Massingill, even if he was not the one who actually shot them. In short, the evidence was sufficient to support Defendant's convictions for the attempted especially aggravated robbery of Williams and the attempted especially aggravated robbery of Massingill.

**C.**

We conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient to support Defendant's conviction for the first degree felony murder of Blair.

Under Tennessee law, "[f]irst degree murder is: . . . [a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." Tenn. Code Ann. § 39-13-202(a)(2) (1997).

Massingill testified that during the events in question, Reid shot Blair. Dr. Harlan testified that Blair's death was caused by a .22 caliber bullet that entered the right side of his head and traveled through his brain. There is no question that Blair was killed during the perpetration or attempt to perpetrate a robbery. As previously mentioned, it is irrelevant that Reid, rather than Defendant, fired the shot that killed Blair because Defendant is criminally responsible for the actions of Reid and Sanford under Tennessee Code Annotated section 39-11-402(2).

**D.**

Defendant's argument essentially amounts to a contention that the proof was insufficient because the State's case "was fraught with many inconsistencies." Specifically, Defendant relies on inconsistencies in the testimony of Williams, Massingill, and Binion about whether Defendant had a gun, whether Defendant robbed or searched anyone, and whether Defendant fired any shots. However, "[t]he credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact." State v. Cribbs, 967 S.W.2d 773, 793 (Tenn. 1998). We will not second guess the jury in the resolution of any conflicts in the proof.

In this case, Defendant essentially asks us to reconsider the evidence and substitute a verdict of not guilty in place of the verdict found by the jury. That is not our function. Instead, we conclude that a rational jury could have found beyond a reasonable doubt that Defendant committed the four offenses for which he was charged. See Tenn. R. App. P. 13(e). Defendant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.